UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GUANGHONG INTERNATIONAL (HK) LTD,   :

               Plaintiff,       :

      -against-       :  **REPORT AND RECOMMENDATION**

ULTIMATE FINANCIAL SOLUTIONS LLC,  :     11 Civ. 4019 (RMB)(KNF)
and RONGCHANG YU,

                  :

           Defendants.
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE RICHARD M. BERMAN, UNITED STATES DISTRICT JUDGE

## BACKGROUND

Guanghong International (HK) LTD ("GI") commenced this action, for breach of

contract, against Ultimate Financial Solutions LLC ("UFS") and Rongchang Yu ("Yu").  UFS

denied the allegations and made a counterclaim and a crossclaim against Yu.

GI asserted in its complaint that, on or about November 8, 2010, the defendants, Factory

Direct Sales, Inc. and F.D. International, Inc. entered into a Collection Distribution Agreement,

pursuant to which UFS was to disburse to GI "$105,190.22," in collected funds.  According to

GI, UFS stated that it possessed that amount, but did not disburse it to GI because Yu had not

signed a disbursement request, as provided by the agreement.  GI asserted that Yu had no basis

to withhold or refuse to give his approval for the distribution of the funds due to GI.  GI alleged

that Yu's conduct was wanton and wilful, undertaken for the sole purpose of delaying payment

to GI.  GI asserted that "[b]y reason [sic] said conduct, Plaintiff has suffered and will continue to

suffer damages in the form of loss of use of the funds as well as in the form of fees and expenses

in conducting litigation against third parties, in the amount of at least $15,000, as near as the same can now be estimated." GI sought "$105,120.99 together with interest cost and attorney fees" against UFS and Yu, as well as at least $15,000 against Yu.

UFS asserted in its counterclaim and crossclaim that it "is a stakeholder in the funds it is currently holding in the sum of $105,190.22," and that GI and Yu "made conflicting claims to the monies held by UFS." According to UFS, it "has no claim to the monies and is willing to deposit the same in Court or deliver the monies to such persons as the Court shall direct."

On September 8, 2011, GI's claims against UFS and UFS's counterclaim and cross-claim were dismissed, pursuant to Rule 41 of the Federal Rules of Civil Procedure. On September 20, 2011, the Clerk of Court noted Yu's default because Yu did not file an answer or move with respect to the complaint. Thereafter, a default judgment, pursuant to Rule 55 of the Federal Rules of Civil Procedure, was granted to GI against Yu, and the matter was referred to the undersigned for an inquest on damages.

On November 9, 2011, the Court directed GI to file: (1) proposed findings of fact and conclusions of law; and (2) an inquest memorandum, accompanied by supporting affidavits and exhibits, setting forth proof of its damages. It also directed Yu to file any opposing memorandum, affidavits, as well as any alternative findings of fact and conclusions of law. Subsequently, GI filed its: (i) proposed findings of fact and conclusions of law; and (ii) memorandum of law. GI also filed an affidavit of Sheldon Karp ("Karp"), accompanied by Exhibit A (Collection Distribution Agreement, dated November 8, 2010), Exhibit B (Ultimate Factoring Services agreement, dated February 11, 2010, between UFS and Factory Direct Sales LLC) and Exhibit C (UFS's Collected Funds Remitted, dated August 16, 2011). Yu did not oppose GI's inquest submissions. Before the Court are GI's inquest submissions.

## PLAINTIFF'S INQUEST SUBMISSIONS

Karp stated in his affidavit that, in November 2010, he was acting as a commission agent for Yi Ben Clothing Co., Ltd. ("Yi Ben") and as a special collection agent for GI. He explained that, as the commission agent for Yi Ben, he was personally familiar with Yu, who is Yi Ben's principal and Frank Ho ("Ho"), who, together with Yu, owned Factory Direct Sales, Inc., the United States agent of Yi Ben. GI asked Karp to oversee an arrangement pursuant to which payments received from Yi Ben's customer Apparel Ventures, Inc. would be distributed to GI by UFS. Karp explained that, as part of that arrangement, the November 8, 2010 agreement was signed by Yu and Ho, pursuant to which UFS would make the remittance to GI only after Yu and Ho authorized the distribution. Karp stated that he was present when the November 8, 2010 agreement was signed. According to Karp, all parties acted according to the terms of the agreement until March 2011, when Yu refused to authorize any further distribution to GI, notwithstanding Ho's authorization.

Karp stated that UFS and Factory Direct Sales, Inc. "had previously entered into a Factoring Agreement," dated February 11, 2010. According to Karp, "[b]y virtue of the terms and conditions of the Factoring Agreement as well as the terms of the November 8th Agreement, UFS was authorized to deduct any legal fees it incurred as a result of acting pursuant to that Agreement." Karp stated "[b]ecause of Mr. Yu's failure to approve the distribution and the need for litigation, UFS incurred attorney fees so as to comply with the November 8th agreement."

Karp stated the Factoring Agreement provided that UFS was authorized to charge a minimum commission for each and every month that the Factoring Agreement was in effect. According to Karp, "Yu's actions caused the Factoring Agreement to be extended for 5 unnecessary months." Karp explained:

3

> When the funds were finally transmitted to [GI] after Mr. Yu's failure to appear in
> the litigation, UFS submitted its Collected Funds Remitted invoice (Exhibit C),
> which showed that UFS deducted from the remittance to [GI] both the minimum
> commissions for May through August as well as the attorney fees that UFS stated it
> incurred due to Mr. Yu's actions and the need to engage attorneys to defend UFS in
> this litigation.

According to Karp, "both the deduction by UFS for the legal fees they suffered and the 2 months

minimum commissions to which they were entitled were directly caused by Mr. Yu's

unwarranted failures to approve the distribution of funds."

In its memorandum of law and its proposed findings of fact and conclusions of law, GI

argues it is entitled to damages against Yu in the amount of $12,985.  GI contends that it "has by

proper affidavit produced admissible evidence in the form of invoices which allow the Court to

calculate the plaintiff's damages with reasonable certainty, and it is therefore appropriate to

award the plaintiff the sum reflected in those invoices."  GI maintains that, "[e]ven though the

complaint's Third Cause of Action against Rongchang Yu does not recite the language including

a demand for prejudgment interest, awarding interest in a contract cause of action under New

York law is mandatory."  GI argues "if state law makes prejudgment interest mandatory, then the

federal courts will follow that rule in diversity actions," citing Stillman v. InService America

Inc., 738 F. Supp. 2d 480 (S.D.N.Y. 2010).  According to GI, "having pled a breach of contract,

any demand for prejudgment interest would have been mere surplusage, because the proper

application of New York law requires courts to include prejudgment interest in any judgment for

breach of contract," citing Boyce v. Soundview Tech. Group, No. 03 Civ. 2159, 2005 WL

627780 (S.D.N.Y. Mar. 17, 2005).  GI seeks "$12,985 together with prejudgment interest at 9%

from the date UFS transmitted the collected funds; i.e. August 16, 2011."

In its proposed findings of facts and conclusions of law, GI contends that the "damages

as reflected in the Statement issued by UFS entitled Collected Funds Remitted and deducted

from the remittance to [GI] and thus sustained by Plaintiff are as follows":

| | | |
|---|---|---|
| 4-Apr | UFS legal fees | 2500 |
| 30-Apr | Minimum comm. | 1235 |
| 31-May | Minimum comm. | 1250 |
| 1-Jun | UFS legal fees | 2000 |
| 28-Jun | UFS legal fees | 3500 |
| 31-Jul | Minimum comm. | 1250 |
| 30-Aug | Minimum comm. | 1250 |
| | | 12,985 |

GI maintains that the damages sought "are the natural and foreseeable consequence of defendant

Rongchang Yu's breach of his obligations under the November 8th Agreement," and they "were

adequately set out in the complaint, and the fact that the exact amount was not stated is irrelevant

since the amount of damages could be reasonably calculated from admissible evidence"; thus, no

hearing on damages is required.

**DISCUSSION**

*Legal Standard*

"Even when a default judgment is warranted based on a party's failure to defend, the

allegations in the complaint with respect to the amount of the damages are not deemed true.  The

district court must instead conduct an inquiry in order to ascertain the amount of damages with

reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir.

1999).  Establishing the appropriate amount of damages involves two steps: (1) "determining the

proper rule for calculating damages on . . . a claim"; and (2) "assessing plaintiff's evidence

supporting the damages to be determined under this rule."  Id.  Rule 55(b)(2) of the Federal

Rules of Civil Procedure "leaves the decision of whether a hearing is necessary[, for determining

damages,] to the discretion of the district court" and "as long as . . . there [is] a basis for the

5

damages specified in a default judgment," the court is not required to hold a hearing.  Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).  When assessing damages, a court cannot rely on the plaintiff's statement of the damages; rather, damages must be established "with reasonable certainty."  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997).

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

> The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action.  It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2663 (3d ed. 1998).  "[N]otice that comes at the inquest stage" is not sufficient in itself to satisfy the notice requirement of Rule 54(c) and to "permit a plaintiff in a default action to recover for damages not claimed in the complaint."  Silge v. Merz, 510 F.3d 157, 161 (2d Cir. 2007).  Where the complaint does not include a demand for prejudgment interest "the conventional additional demand for 'such other and further relief as the Court deems just and proper' does not constitute a demand for prejudgment interest."  Silge, 510 F.3d at 160.  State substantive law governs damages issues in a case over which a federal court exercises diversity jurisdiction.  See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 437, 116 S. Ct. 2211, 2224 (1996).

*Application of Legal Standard*

In the complaint, GI sought damages "in the form of loss of use of the funds as well as in the form of fees and expenses in conducting litigation against third parties," under the "Third Cause of Action," which is the only claim for which GI seeks damages against Yu.  In its <u>ad damnum</u> clause, GI also sought "such other, further and additional relief as to this Court may be just and proper under the circumstances."  However, it appears from Karp's affidavit and GI's memorandum of law, that damages sought at the inquest stage against Yu are "the minimum commissions for May through August as well as the attorney fees that UFS stated it incurred due to Mr. Yu's actions and the need to engage attorneys to defend UFS in this litigation."  This GI cannot do because "[a] default judgment must not differ in kind from . . . what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  "[T]he minimum commissions for May through August" that UFS agreed to be charged by Factory Direct Sales LLC, under the terms of its February 11, 2010 agreement, "as well as the attorney fees that UFS stated it incurred" in this litigation, are not damages GI sought in the complaint, <u>i.e.</u> "loss of use of the funds" and "fees and expenses in conducting litigation against third parties."  No evidence was presented that would suggest that: (a) the "loss of use of the funds" includes the "minimum commissions" UFS deducted from GI, based on UFS's agreement with Factory Direct Sales LLC; and (b) GI's "fees and expenses in conducting litigation against third parties" include UFS's attorney's fees incurred in this action. The damages GI seeks at the inquest stage of the proceeding differ in kind from those sought in the complaint.  GI's seeking, for the first time at the inquest stage, the minimum commissions UFS had to pay to Factory Direct Sales LLC, under its agreement, as well as UFS's attorney's fees claimed to have been incurred in this litigation, is not sufficient in itself to satisfy the notice requirement of Rule 54(c) and to "permit a plaintiff in a default action to recover for damages

not claimed in the complaint." Silge, 510 F.3d at 161.  Therefore, because the damages sought at

the inquest stage differ in kind from those sought in the complaint, they are not warranted.

Accordingly, a full evidentiary hearing is not necessary.

Moreover, even if the kind of damages sought at the inquest stage were warranted, GI

failed to prove damages with reasonable certainty.  Karp stated, in his affidavit, that "UFS and

Factory Direct Sales had previously entered into a Factoring Agreement, a copy of which is

annexed as Exhibit B."  However, Exhibit B appears to be a copy of the February 11, 2010

agreement between UFS and Factory Direct Sales LLC that is not signed by UFS, and nothing in

Karp's affidavit explains the basis for or the source of his knowledge about the February 11,

2010 agreement, given that he was employed as an agent by Yi Ben and GI, not UFS or Factory

Direct Sales LLC.  Karp's lack of knowledge concerning Exhibit B and Exhibit B's questionable

authenticity—Exhibit B is not admissible evidence, see Fed. R. Evid. §§ 602 & 901—cannot

serve to prove damages.

Even if Exhibit B were admissible evidence, it does not explain what connection, if any,

exists between the February 11, 2010 agreement and GI.  Karp's conclusory statement that "[b]y

virtue of the terms and conditions of the Factoring Agreement, as well as the terms of the

November 8th Agreement, UFS was authorized to deduct any legal fees it incurred as a result of

acting pursuant to that Agreement" is not a factual statement, and is confusing.  Karp did not

identify "that Agreement" in the phrase "pursuant to that Agreement," and he did not explain

what relevance, if any, UFS's authorization to deduct any legal fees has to the damages GI seeks

from Yu for his breach of the November 8, 2010 agreement, which contains an indemnity clause

providing that Ho, Yu and Factory Sales LLC, "indemnify [UFS] and hold [UFS] harmless from

and against any and all claims, demands, costs, expenses (including attorney's fees) and

judgments of any kind or nature which may or might be made or asserted against you by reason of the subject matter of this Agreement."  The indemnity clause of the November 8, 2010 agreement suggests that UFS might be entitled to be indemnified by Ho, Yu and Factory Direct Sales LLC for legal fees it incurred in connection with claims asserted against it by GI in this action.  However, UFS is no longer a party to this action, pursuant to Rule 41 of the Federal Rules of Civil Procedure, and GI cannot obtain for UFS its attorney's fees, as these fees were not sought in the complaint, and neither the basis for the requested fees nor their amount was proved by evidence submitted on this inquest.

In addition to the above-mentioned deficiencies, GI failed to establish the amount of its damages, with reasonable certainty, because Karp's affidavit contains internal inconsistencies and it is also inconsistent with GI's proposed findings of facts.  Karp stated that "UFS was authorized to charge a minimum commission for each and every month that the Factoring Agreement was in effect," and Yu's actions caused the agreement "to be extended for 5 unnecessary months."  Karp also stated that "UFS deducted from the remittance to [GI] . . . the minimum commissions for May through August."  Additionally, he stated that UFS's deduction of "the 2 months minimum commissions to which they were entitled were directly caused by" Yu's actions.  Notwithstanding the fact that Karp did not identify, in his affidavit, the percentage or amount of the commissions UFS deducted from its remittance to GI, it is not clear from Karp's affidavit whether the commissions UFS deducted from its remittance to GI were: (a) for "5 unnecessary months"; (b) "for May through August"; or (c) for "the 2 months minimum commissions to which they were entitled."

Karp's affidavit is also inconsistent with GI's proposed findings of fact, which seek commissions, as follows: "30-Apr," "31-May," 31-Jul," and "30-Aug."  Moreover, Karp's

affidavit and GI's proposed findings of fact are also inconsistent with Exhibit C, Collected Funds Remitted, which indicates the following commissions, not including the March 2011 minimum commission charge, which GI does not seek to recover: (i) April 2011 minimum commission charge of $1,235.06, dated April 30, 2011; (ii) May 2011 minimum commission charge of $1,250, dated May 31, 2011; and (iii) July 2011 minimum commission charge of $1,250, dated July 31, 2011.  Exhibit C does not contain "30-Aug Minimum comm. 1250," as indicated in GI's proposed findings of fact, although it contains, under the rubric "Commission," an amount of $1,250, dated June 30, 2011, without any explanation in the section headed "Explanation." Moreover, Exhibit C is not an invoice, as GI claims in its submissions, but a statement of "Collected Funds Remitted," and it is not the case, as GI contends, that GI, "by proper affidavit produced admissible evidence in the form of invoices which allow the Court to calculate the plaintiff's damages with reasonable certainty, and it is therefore appropriate to award the plaintiff the sum reflected in those invoices."  No invoices were submitted with Karp's affidavit. Even assuming that GI's damages are not barred by Rule 54(c) because they are different in kind from those GI sought in its complaint,  Karp's affidavit and the exhibits attached to it do not establish GI's damages with reasonable certainty.

　　　　In addition, even assuming that GI is entitled to damages, it is not entitled to prejudgment interest on the damages awarded pursuant to a judgment by default.  Since GI's complaint did not include a demand for prejudgment interest, the conventional additional demand for "such other, further and additional relief as to this Court may be just and proper under the circumstances," does not constitute a demand for prejudgment interest.  See Silge, 510 F.3d at 160.  The cases cited by GI for the proposition that prejudgment interest is mandatory under New York law, "whether the prejudgment interest is alleged or not," are inapposite because they

10

do not involve a judgment by default and, consequently, do not implicate the notice requirement pursuant to Rule 54(c) of the Federal Rules of Civil Procedure.

## RECOMMENDATION

For the foregoing reasons, I recommend that no damages be awarded to the plaintiff in this action.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, 500 Pearl Street, Room 1320, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Berman.

***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York            Respectfully submitted,
      March 26, 2012

                                       *Kevin Nathaniel Fox*
                                     KEVIN NATHANIEL FOX
                                     UNITED STATES MAGISTRATE JUDGE